FILED

AUG 07 2026

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY [signature] DEPUTY CLERK

ALEXANDER OJINGWA
5343 Angelina Ave
Carmichael CA 95608
916-585-1933
Plaintiff, In Pro Per

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**ALEXANDER OJINGWA**

Plaintiff

vs.

**WELLSFARGO BANK, N.A.; and DOES 1 through 50**

Defendant(s)

**Case No.: 2:26-cv-02429-DJC-CSK**
**[Sacramento Superior Court No. 26CV013133]**

**First Amended Complaint for**
**1. Unruh Act - Civ. Code § 51(f)**
**2. Disabled Persons Act - §§ 54, 54.1, 54.3**
**3. CA UCL - Bus. & Prof. Code § 17200**
**4. Breach of Contract**
**5. Breach of Implied Covenant of Good Faith and Fair Dealing**
**6. Negligent Misrepresentation**
**7. Promissory Estoppel**

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. This action arises from an extended disability-access dispute between Plaintiff Alexander Ojingwa and Defendant Wells Fargo Bank, N.A. ("Wells Fargo") concerning Plaintiff's ability to effectively receive, process, and act upon substantive and time-sensitive banking and claims communications. Plaintiff has ADHD and dyslexia, disabilities whose functional effects materially impair his

ability to reliably process, organize, retain, retrieve, and timely act upon complex financial correspondence when substantive communications are available only through fixed paper mail.

2. Plaintiff repeatedly requested a disability-related modification requiring neither elimination of physical mail nor use of any particular technology. Plaintiff asked Wells Fargo to make substantive communications also electronically accessibleso that he could use text-to-speech, electronic search and organization, reminders, and related accessibility tools. Plaintiff remained flexible as to the mechanism, including email, secure messaging, online document delivery, mobile access, or another effective electronic means. Plaintiff sought access to the substantive information necessary to participate meaningfully in Wells Fargo's existing banking, claims, dispute, and account-administration processes—not preferential treatment, waiver of legitimate evidentiary requirements, or guaranteed success on any claim. This formulation reflects the central factual theory adopted in the consolidated matrix.

3. Wells Fargo itself represented through its Claims Assistance Center that customers seeking written communications in an alternative format in compliance with the Americans with Disabilities Act could notify a Wells Fargo representative. Plaintiff repeatedly followed that instruction. The recorded calls reflect substantial inconsistency, however, concerning how Plaintiff's request was supposed to be implemented. One representative could not locate information concerning the alternative-communication process and ultimately acknowledged that he had not personally been trained on the accommodation Plaintiff was requesting.

4. The recorded communications also demonstrate the distinction between ordinary "paperless" banking and the accommodation Plaintiff actually sought. A Wells Fargo representative accessed Plaintiff's account and represented that his relevant notice and statement preferences were already configured as "online only." When Plaintiff asked whether, based upon what the representative could see, his Wells Fargo communications should therefore be electronic, the representative answered affirmatively. Plaintiff immediately explained that substantive claims correspondence and other consequential communications were nevertheless not electronically available to him. Wells Fargo personnel subsequently acknowledged that not all claims information was available through the online message center and that certain claims information continued to be communicated through physical mail.

5. Plaintiff alleges that this was not an isolated communication error. Over approximately two years, Plaintiff repeatedly informed Wells Fargo personnel at multiple levels of his disabilities, explained the particular communication barrier, requested accessible electronic copies of substantive communications, and complained when the existing process failed. Wells Fargo personnel allegedly made both representations concerning the then-existing status and capabilities of Plaintiff's electronic communication settings and promises concerning future implementation, escalation, electronic delivery, and methods for responding to claims. Plaintiff alleges that he reasonably relied upon those representations and promises in determining whether further action was necessary to obtain accessible communications and how to monitor and participate in Wells Fargo's claims processes.

6. Plaintiff further alleges that Wells Fargo's ordinary electronic functions did not cure the barrier. Generic electronic alerts could advise Plaintiff that a claim had been opened or that its status had changed, while the substantive evidence requests, deadlines, determinations, provisional-credit information, and response instructions necessary to meaningfully participate in the claim were not reliably available through the same electronic channel. Plaintiff alleges that in some instances Wells Fargo later asserted that correspondence had been mailed even though Plaintiff did not receive the claimed physical correspondence either. Wells Fargo controls the document-generation, mailing, electronic-delivery, claim, and accommodation records necessary to establish the complete communication history.

7. Plaintiff alleges that these communication failures produced concrete consequences. Between approximately May 2024 and May 2026, more than ten disputes involving more than approximately $4,000 were allegedly denied, closed, or otherwise adversely resolved under circumstances involving missing or inaccessible substantive communications. Plaintiff does not allege that every underlying merchant dispute necessarily would have been decided in his favor. He alleges that, in material instances, he was deprived of or substantially impaired in his opportunity to timely receive Wells Fargo's requests, understand what evidence was required, provide that evidence, and participate before Wells Fargo made an adverse determination. The same broader sequence allegedly contributed to debit-card restrictions and closure of the teen account Plaintiff maintained for his minor daughter.

8. The dispute intensified in May 2026 when Wells Fargo reversed approximately $1,500 in provisional credits associated with an Airbnb dispute after asserting that Plaintiff had failed to provide requested evidence. Plaintiff alleges that he had specifically requested electronic communications concerning the claim, did not effectively receive the evidence request, and did not receive the claimed mailed request either. The reversal overdrafted Plaintiff's checking account and substantially depleted his available savings. Recorded calls contemporaneously document Plaintiff reporting the approximately $1,500 reversal, his lack of effective notice, Wells Fargo's prior assurances concerning electronic communication, and the resulting inability to pay ordinary expenses.

9. Plaintiff alleges that his ensuing efforts to resolve the accommodation and financial crisis required prolonged and repeated communications with Wells Fargo and escalation through customer service, claims management, next-level support, Executive Team personnel, and formal complaints personnel. Recorded calls reflect employees directing Plaintiff between departments, uncertainty concerning who could implement the accommodation, and acknowledgment that Plaintiff's requested electronic accommodation was different from standard formats such as Braille or enlarged print. During one recorded call, next-level support representative Jasmine stated that Wells Fargo had accommodation guidelines but that "there's not active trainings," and characterized Plaintiff's requested accommodation as "custom." Plaintiff alleges that the prolonged May 2026 financial and accommodation dispute culminated in a serious medical episode requiring ambulance transportation, emergency-room treatment, and subsequent cardiology follow-up.

10. Plaintiff therefore alleges more than poor customer service, a preference for email, or an isolated mailing error. He alleges a recurring disability-access problem in which Wells Fargo represented that alternative-format communications were available; repeatedly received notice of Plaintiff's particular disability-related barrier; represented or promised that electronic communication was available, active, or would be implemented; nevertheless failed to provide a consistently effective means of electronically accessing consequential substantive communications; and then, in material instances, made adverse claims or account decisions based upon alleged nonresponse to information Plaintiff contends he did not effectively receive. Plaintiff seeks relief under California law through the Unruh Civil Rights Act, California Disabled Persons Act, California Unfair Competition Law, contract and implied-

covenant principles, negligent misrepresentation, and promissory estoppel, as separately alleged below.

## JURISDICTION

Plaintiff originally commenced this action in the Superior Court of California for the County of Sacramento. Defendant Wells Fargo Bank, N.A. removed the action to this Court on July 10, 2026.

Plaintiff files this First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1). This First Amended Complaint supersedes the original Complaint and is the operative pleading.

This First Amended Complaint asserts causes of action arising under California law. Plaintiff does not assert an independent cause of action arising under federal law and does not seek relief under any federal cause of action.

Certain California statutes asserted herein incorporate standards established by the Americans with Disabilities Act, including California Civil Code sections 51(f), 54(c), and 54.1(d). Plaintiff invokes the ADA only to the extent incorporated into those California causes of action and does not assert an independent cause of action under the ADA.

Plaintiff maintains that the claims alleged in this operative First Amended Complaint do not independently arise under federal law for purposes of 28 U.S.C. section 1331 and that the incorporation of federal standards into Plaintiff's California statutory causes of action does not independently establish federal-question jurisdiction.

Plaintiff further disputes the existence of diversity jurisdiction under 28 U.S.C. section 1332. Plaintiff seeks the relief authorized by the California causes of action alleged herein according to proof and does not concede that the jurisdictional amount required by section 1332 is satisfied.

Plaintiff therefore maintains that, following the filing of this First Amended Complaint, no independent basis for original federal subject-matter jurisdiction exists. Plaintiff is contemporaneously moving to remand this action to the Superior Court of California for the County of Sacramento pursuant to 28 U.S.C. section 1447(c).

Plaintiff's filing of this First Amended Complaint in this Court is required by the present procedural posture of this removed action and does not constitute consent to federal subject-matter jurisdiction or waiver of Plaintiff's request for remand.

Plaintiff does not concede that this Court has diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff seeks all damages and other relief authorized by the California causes of action alleged herein, according to proof. Nothing herein constitutes a stipulation, waiver, limitation, or cap upon the damages or other relief otherwise recoverable under California law. Plaintiff expressly reserves his position that Defendant has not established the requirements for diversity jurisdiction, including the amount-in-controversy requirement.

**PARTIES**

Plaintiff Alexander Ojingwa is, and at all relevant times was, an individual residing in Sacramento County, California. Plaintiff is disabled within the meaning of federal and California disability-rights laws. Plaintiff suffers from dyslexia, ADHD, serious heart conditions including Atrial Fibrillation. These disabilities substantially impair major life activities including reading, concentrating, managing stress, responding to technical or time-sensitive financial correspondence, and maintaining physical stability during severe stress. Plaintiff's dyslexia and ADHD further affects his ability to process and respond to complex administrative communications when they are not provided in an accessible format.

Defendant Wells Fargo Bank, N.A. is a national banking association authorized to conduct business in California and regularly conducting substantial business throughout Sacramento County and the State of California. Wells Fargo operates physical banking branches, telephone-banking systems, online banking systems, dispute-resolution services, mobile application services, electronic banking systems, card services, deposit-account services, claims systems, customer-service departments, and financial-services platforms offered to the general public.

Wells Fargo is a business establishment within the meaning of California Civil Code section 51 and a public accommodation subject to the accessibility and effective communication requirements of the Unruh Civil Rights Act. Wells Fargo provides banking goods, services, privileges, advantages, and accommodations to the general

public and is obligated to provide disabled customers with full and equal access to those services.

Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 100 and therefore sues those Defendants by fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each Doe Defendant is responsible in some manner for the acts, omissions, policies, procedures, representations, training failures, supervision failures, or damages alleged herein.

Plaintiff is informed and believes and thereon alleges that each Defendant was the agent, servant, employee, partner, representative, alter ego, parent, subsidiary, joint venturer, and/or co-conspirator of each remaining Defendant and was acting within the course and scope of such relationship. Plaintiff is further informed and believes and thereon alleges that each Defendant authorized, ratified, approved, directed, participated in, or failed to prevent the acts and omissions alleged herein.

## GENERAL ALLEGATIONS

A. Nature of the Action and Banking Relationship

__. This action arises from Plaintiff's allegations that Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), over an extended period and despite repeated actual notice of Plaintiff's disabilities and disability-related communication limitations, failed to provide Plaintiff meaningful access to substantive banking and claims communications through an effective disability-related communication modification; continued administering consequential claims, dispute, and account processes despite the known communication barrier; made inaccurate representations and unfulfilled promises concerning electronic communications and accommodation implementation; and thereafter imposed or permitted adverse financial consequences arising in material part from Plaintiff's inability to effectively receive, understand, and respond to communications Wells Fargo controlled.

__. Plaintiff maintained consumer deposit and related banking accounts with Wells Fargo and utilized Wells Fargo's consumer banking services, including deposit-account services, debit-card services, online and mobile banking, transaction-dispute and claims services, provisional-credit procedures, account notices, and other account-management services.

__. Plaintiff also maintained or managed a Wells Fargo teen banking account for the benefit of his minor daughter. Plaintiff used that account to transfer funds to his daughter, monitor and manage her spending, and administer financial matters relating to her.

__. During the relevant periods, Plaintiff's deposit-account relationship and use of Wells Fargo's online banking services were governed by written agreements including the applicable Wells Fargo Deposit Account Agreement ("DAA"), Online Access Agreement ("OAA"), Consumer Account Fee and Information Schedule, account-specific disclosures, and applicable amendments and addenda (collectively, the "Account Agreements").

__. The Account Agreements governed material aspects of the parties' relationship, including deposit-account administration, statements and notices, online and electronic banking services, disputed transactions, investigations, requests for information or documentation, provisional credits and reversals, customer cooperation, and other account-related services.

__. The versions of the Account Agreements applicable to particular conduct varied during the relevant period. Plaintiff relies upon the versions operative at the time of the particular transactions and events and does not contend that later revisions governed earlier events.

__. Wells Fargo's OAA expressly governs Wells Fargo Online and Wells Fargo Mobile services and contains provisions addressing electronic access, statements and documents, notices, and electronic delivery of account-related information. The version effective May 21, 2026 provides, among other things, that Wells Fargo may provide written information electronically through an electronic address, its website, an online-banking secure mailbox, or other electronic means. Plaintiff alleges contractual rights only to the extent created by the applicable agreement actually operative at the relevant time and does not allege that these provisions categorically required every Wells Fargo communication to be emailed.

__. Plaintiff likewise does not allege that every oral representation by Wells Fargo personnel automatically modified the written Account Agreements. Plaintiff separately alleges below Wells Fargo's representations concerning then-existing facts and its

promises concerning future performance, which support distinct and alternative theories.

That last separation is important after our work on Counts IV, VI, and VII.

B. Plaintiff's Disabilities and Individualized Functional Limitations

__. Plaintiff is an individual with disabilities. Among the disabilities directly relevant to the communication barrier alleged herein are Attention-Deficit/Hyperactivity Disorder ("ADHD") and dyslexia.

__. Plaintiff is physically capable of receiving, opening, and reading ordinary paper mail. Plaintiff does not allege that he is blind, physically unable to open correspondence, or categorically incapable of reading printed material. Rather, the functional effects of his ADHD and dyslexia materially impair his ability to reliably process, organize, retain, retrieve, prioritize, and timely act upon complex and time-sensitive financial information when substantive communications are available only in fixed paper form.

__. Plaintiff's ADHD affects executive functions materially relevant to managing consequential financial correspondence, including sustained attention, working memory, task initiation, task switching, organization, prioritization, prospective memory, and time perception. A communication requiring future action may be physically readable when received while nevertheless being materially less accessible to Plaintiff because acting upon it requires him to preserve and later relocate the correspondence, remember the future task, associate the communication with supporting documents, track the deadline, initiate the responsive task, and complete that task at the appropriate future time.

__. These disability-related difficulties become particularly significant when communications concern evidentiary deadlines, documentation requests, provisional-credit reversals, disputed transactions, claim determinations, account restrictions, or other matters requiring timely action.

__. Plaintiff's dyslexia additionally affects his ability to efficiently process dense or complex fixed-format written information. Electronic documents enable Plaintiff to use functions unavailable with ordinary paper correspondence, including text-to-speech, enlargement and reformatting, electronic search, electronic organization and retrieval, and other accessibility tools that assist him in processing and comprehending written information.

__. Plaintiff in fact uses electronic text-to-speech functionality by selecting electronic text and having his telephone or other electronic device read the text aloud to him.

During a recorded Wells Fargo call, Plaintiff specifically explained that this method materially improves his ability to comprehend substantive communications.

__. Electronic communication further permits Plaintiff to maintain searchable archives, retrieve documents through keyword searches, electronically organize related correspondence, access the same information while speaking with Wells Fargo personnel, use reminders and other digital tools, and preserve Wells Fargo communications together with merchant emails, receipts, refund requests, and supporting evidence.

__. Thus, the requested electronic access was not merely more convenient or Plaintiff's preferred way of receiving correspondence. Plaintiff alleges that accessible electronic copies were necessary for him to reliably and effectively receive, process, organize, retrieve, and act upon consequential banking and claims communications because of the individualized functional effects of his disabilities.

C. The Accommodation Plaintiff Actually Requested

__. Plaintiff repeatedly requested that Wells Fargo provide accessible electronic copies of substantive and time-sensitive banking and claims communications as a disability-related accommodation.

__. Plaintiff did not require Wells Fargo to cease sending physical mail. He did not request suppression of physical correspondence or demand that Wells Fargo disregard any contractual or legal requirement to use U.S. Mail. Plaintiff requested that substantive communications also be made electronically accessible to him.

__. Plaintiff remained flexible regarding the particular electronic mechanism. He was willing to receive the substantive communication through email, secure electronic messaging, Wells Fargo's website or document center, its mobile application, or another effective electronic mechanism.

__. Plaintiff's request concerned the substance of communications requiring action—including claims and dispute correspondence, evidence requests, evidentiary deadlines, instructions concerning submission of documents, investigatory communications, dispute determinations, provisional-credit notices and reversals, account restrictions, account-closure communications, and comparable consequential financial information.

__. Plaintiff did not request that Wells Fargo alter the substantive standards governing a claim, waive legitimate documentation requirements, guarantee that Plaintiff would prevail in any dispute, excuse him from otherwise applicable evidentiary requirements, or give him financial benefits unavailable to other customers.

__. Plaintiff instead sought modification of the communication method so that he could meaningfully receive and act upon the same substantive information necessary to participate in Wells Fargo's existing banking and claims processes.

__. Plaintiff sought and intended to continue using those services and remained willing to provide legitimate information and evidence requested of him when the request and the method for responding were effectively communicated.

__. Plaintiff alleges that the requested modification was practical in light of Wells Fargo's extensive existing electronic infrastructure, including online banking, mobile banking, electronic statements, secure electronic correspondence, email communications, electronic alerts, and online document delivery. Plaintiff does not presently contend that every Wells Fargo internal claims system could necessarily be altered without burden. The particular technical capabilities, costs, departmental systems, and any alleged burden are matters substantially within Wells Fargo's knowledge.

D. Wells Fargo Expressly Represented That ADA Alternative Formats Were Available

__. Wells Fargo's own Claims Assistance Center telephone system expressly informed customers: "If you would like to receive written communications from Wells Fargo in an alternative format in compliance with the Americans with Disabilities Act, please let a representative know" or contact Wells Fargo at a specified telephone number.

__. That prerecorded statement is captured in Plaintiff's recorded Wells Fargo calls.

__. Plaintiff repeatedly did exactly what Wells Fargo's system instructed: he informed Wells Fargo representatives that he required an alternative communication format because of his disabilities and asked how to have substantive communications provided electronically.

__. Plaintiff reasonably understood Wells Fargo's prerecorded representation to mean that Wells Fargo maintained some process through which a disabled customer could identify a disability-related communication barrier, request an alternative format, and obtain meaningful consideration and implementation of the requested modification.

__. The responses Plaintiff actually received from Wells Fargo personnel were materially inconsistent with one another and, Plaintiff alleges, demonstrated substantial confusion concerning how such a request was supposed to be handled.

The recording itself now makes this allegation considerably stronger than it was when we were relying on your recollection alone.

E. Repeated Notice to Wells Fargo

__. Over approximately two years, Plaintiff repeatedly informed Wells Fargo that he was disabled, identified ADHD and dyslexia as disabilities relevant to the communication issue, explained the functional difficulty created by complex paper-only financial correspondence, and requested accessible electronic communications.

__. Plaintiff estimates that he raised this disability-related communication issue approximately thirty or more times over the broader period and approximately fifteen or more times during the final six months.

__. Plaintiff raised the issue with personnel at numerous organizational levels, including customer-service representatives, customer-service supervisors, claims representatives, Claims Resolution Managers, claims supervisors, Executive Team personnel, and Enterprise or Executive Complaints personnel.

__. Plaintiff repeatedly distinguished his request from ordinary "paperless statements." He explained that statements themselves were not the principal problem; the problem was substantive claims, dispute, investigatory, evidence-request, provisional-credit, restriction, closure, and other communications that were not being made meaningfully available electronically.

__. In one recorded call, a Wells Fargo representative correctly summarized Plaintiff's concern by stating in substance that the issue was "not about the statement" but about notices related to the claim or disputed transactions.

__. Plaintiff repeatedly informed Wells Fargo not merely of a theoretical communication barrier, but of actual instances in which he learned only after an adverse claim action that Wells Fargo contended it had previously requested information or evidence.

__. Wells Fargo therefore had repeated notice of Plaintiff's disabilities, the particular functional barrier he identified, the accommodation he requested, why he requested it, and his assertion that failure to provide it had already caused adverse claims and financial consequences.

__. By May 2026, the matter had been repeatedly escalated and subsequently entered Wells Fargo's formal complaint and Executive-level review processes. Wells Fargo's institutional knowledge therefore did not depend upon the memory of one isolated frontline employee.

F. Two Different Communication Problems

__. Plaintiff alleges two related but distinct communication problems.

__. First, Wells Fargo in numerous instances generated substantive claims or account communications that were allegedly provided principally or exclusively through

physical correspondence while the substantive content was not electronically accessible through the communication methods Wells Fargo represented were or would be available to Plaintiff.

__. Second, in some instances Plaintiff alleges that he did not actually receive the substantive communication through either electronic means or physical mail, even though Wells Fargo later asserted that correspondence had been generated or mailed.

__. Plaintiff therefore does not allege that every disputed communication actually reached him through USPS and simply should also have been emailed. The factual circumstances varied among individual claims.

__. For example, during a recorded call concerning the approximately $1,500 claim discussed below, Plaintiff expressly told Wells Fargo that the bank claimed it had mailed a request for information but that he did not receive the claimed mailed request either.

__. Wells Fargo possesses the document-generation records, mailing logs, returned-mail records, account notes, electronic-delivery records, and claim files necessary to establish whether particular communications were generated, mailed, returned, electronically posted, or otherwise transmitted.

__. Plaintiff cannot independently reconstruct Wells Fargo's internal communication history without discovery.

G. Wells Fargo's Generic Electronic Functions Did Not Provide the Substantive Communications

__. Plaintiff already had ordinary Wells Fargo online and mobile banking access. Account statements and basic account information were available electronically.

__. Wells Fargo also generated generic electronic claim notifications. Plaintiff's Gmail records independently confirm that Wells Fargo electronically notified him on May 5, 2026 that it had received a claim inquiry, identified Claim Reference No. 26435857, and advised that claim status could be checked.

__. Such generic electronic notifications demonstrate the distinction central to Plaintiff's allegations. Wells Fargo could notify Plaintiff electronically that a claim existed or that its status had changed, yet the electronic notification did not necessarily contain the substantive evidence request, applicable deadline, complete determination, documentation requirements, or instructions necessary to meaningfully participate in the claim.

__. Plaintiff alleges that Wells Fargo's ordinary website and mobile application did not make the complete substantive claims correspondence at issue available to him and did

not provide a generally available claim-document upload mechanism through which he could reliably respond to the evidence requests described herein.

__. This distinction was expressly confirmed during a recorded Wells Fargo call. After a representative told Plaintiff that his account was already configured for "online only" delivery, Plaintiff asked whether that meant all Wells Fargo communications should currently be electronic. The representative affirmatively answered "Yes," subject to one identified account-delivery preference.

__. Plaintiff then explained that he was nevertheless receiving only ordinary or basic electronic information and not substantive claims documents or other important financial correspondence.

__. Later in the same recorded call, Plaintiff specifically asked whether all of his substantive financial information—including claims communications—was actually available through the message center. Wells Fargo's representative acknowledged that it was not.

__. A higher-level Wells Fargo representative subsequently acknowledged during that call that the claims department sometimes sent statuses or other notifications through physical mail.

__. These recorded exchanges demonstrate that ordinary online statement enrollment, account alerts, and generic electronic claim-status notifications were materially different from the accessible electronic delivery of substantive claims communications Plaintiff was requesting.

This is one of the biggest factual improvements from reviewing the actual transcript.

H. Wells Fargo Did Not Provide an Effective Alternative After Being Told Existing Methods Were Ineffective

__. After Plaintiff explained that ordinary paper correspondence, generic alerts, online statements, and fragmented oral information did not address his disability-related limitation, Wells Fargo did not identify and consistently implement another effective method by which the substantive communications at issue would reliably become electronically accessible to Plaintiff.

__. Wells Fargo personnel referenced existing accommodations such as Braille and enlarged-print correspondence. Those accommodations did not address Plaintiff's ADHD- and dyslexia-related functional limitations and did not provide the digital accessibility, searchability, retrieval, organization, and text-to-speech functionality Plaintiff required.

__. Wells Fargo personnel themselves distinguished Plaintiff's requested electronic communication accommodation from those standard formats and described his request as a "custom" accommodation that supposedly required a specialized department.

I. Wells Fargo Controlled the Relevant Information and Response Mechanisms

__. Wells Fargo controlled the systems through which claim communications were generated, the information displayed through online and mobile banking, the methods through which requested evidence could be submitted, claim deadlines communicated to customers, internal accommodation records, and the personnel authorized to reopen or reconsider claims.

__. Plaintiff could not independently create a Wells Fargo electronic submission route, inspect Wells Fargo's claim files, determine what unidentified correspondence Wells Fargo had generated, access internal accommodation records, or determine what particular Wells Fargo employee could implement the requested accommodation.

__. Plaintiff therefore depended upon Wells Fargo for accurate information concerning what it required, what deadlines applied, how documents could be submitted, what communications had been sent, and whether the requested electronic accommodation had actually been entered or implemented.

J. Verified Existing-Fact Representations

__. Wells Fargo personnel made affirmative representations to Plaintiff concerning then-existing facts about Plaintiff's communication settings and Wells Fargo's electronic communication capabilities.

__. During a recorded call, a Wells Fargo representative initially stated that the alternative communication format Wells Fargo could provide under the ADA consisted of text banking or text messages and affirmatively represented that Plaintiff could receive the communications he was discussing electronically.

__. When Plaintiff clarified that he was asking whether claims notifications and the substantive communications themselves would be provided electronically—not merely ordinary banking alerts—the representative initially answered affirmatively.

__. The representative thereafter directed Plaintiff into Wells Fargo's "Manage Banking Alerts" functionality. Plaintiff observed that this consisted merely of ordinary alerts and did not provide the substantive correspondence he had requested. The representative acknowledged that Plaintiff was correct.

__. The representative then accessed Plaintiff's account and stated that Plaintiff's notice-delivery and statement-delivery preferences were already configured as "online only" for the relevant account.

__. Plaintiff specifically asked whether, based on what the representative could see, all of Plaintiff's Wells Fargo communications should presently be electronic. The representative answered "Yes," except for the separately identified account whose delivery preference the representative then sought to change.

__. Plaintiff immediately explained that this representation did not match reality: he was receiving ordinary electronic communications but not the substantive claims and financial documents at issue.

__. Wells Fargo thereafter transferred Plaintiff to a next-level support representative identified as Jasmine.

__. Jasmine acknowledged that, despite the "online" settings shown for statements, not all substantive claims correspondence or other information Plaintiff was discussing was electronically available.

__. These statements are material to Plaintiff's negligent-misrepresentation theory because they concern the then-current configuration and capabilities of Wells Fargo's own systems—matters Plaintiff could not independently inspect.

__. Plaintiff does not presently allege that Wells Fargo's internal systems contained no "online-only" notation. To the contrary, the recording indicates that a representative saw such a notation. Plaintiff alleges that the material representation was inaccurate insofar as Wells Fargo personnel represented that this setting meant the substantive communications Plaintiff was discussing were electronically available when they were not.

This last paragraph is particularly important. The transcript changed our prior wording: there apparently was an online-only notation. We should not allege there was none.

K. Verified Future Promises

__. Wells Fargo personnel separately made promises concerning future actions to address Plaintiff's accommodation and claims problems.

__. During recorded communications, Wells Fargo personnel stated that they would investigate why Plaintiff was not receiving the represented electronic communications, would forward or escalate his accommodation request, would contact or connect him with personnel responsible for implementing the requested modification, and, in particular claims communications, represented that substantive information or instructions would thereafter be provided electronically.

__. Plaintiff repeatedly informed Wells Fargo that he had already been told on prior occasions that his accommodation request had been forwarded to another department and that the department would contact him, but meaningful implementation had not followed.

__. In another recorded call, a Claims Resolution Manager stated that the claims department itself did not know whether electronic communications had been set up on Plaintiff's account and directed Plaintiff to Wells Fargo's phone-banking team as the department responsible for setting up electronic notifications.

__. Plaintiff explained that phone banking was the very department from which he had already been transferred to Claims. The Claims Resolution Manager acknowledged that Plaintiff should not have been transferred away from phone banking if his concern involved notifications and stated that he would explain the matter directly to the phone-banking team.

__. The call then returned Plaintiff to another Wells Fargo representative, who indicated that another higher level of support might be required. Plaintiff alleges that this recurring pattern—one Wells Fargo department directing him to another, which then directed him back—occurred despite repeated assurances that the accommodation would be addressed.

__. Plaintiff further alleges that in connection with the approximately $1,500 claim, a claims manager represented that an email would be sent through which Plaintiff could submit the evidence necessary to seek reopening of the claim, but the promised electronic submission communication was not ultimately provided as represented.

__. Plaintiff relied upon these promises by waiting for the promised communications or implementation and, in material instances, not restarting from the beginning an accommodation process Wells Fargo represented was already being handled.

__. Plaintiff did not rely upon those promises as guarantees that he would win any underlying merchant dispute. His reliance concerned the promised means of obtaining, responding to, and participating in Wells Fargo's claims process.

L. May 2026 Airbnb Claim — Separate From the $583.58 Claim

__. On or about May 5, 2026, Plaintiff initiated a dispute concerning an Airbnb transaction involving approximately $1,500. Plaintiff alleges that the dispute arose from a separate controversy with Airbnb and that he possessed substantial supporting evidence.

__. Wells Fargo's electronic records independently establish that on May 5, 2026 Wells Fargo generated an electronic acknowledgment that it had received a claim inquiry under Claim Reference No. 26435857.

__. When initiating the Airbnb claim, Plaintiff specifically requested that Wells Fargo contact him electronically or by telephone if additional evidence or information was required and again explained the disability-related communication issue.

__. Wells Fargo provisionally credited approximately $1,500 in connection with the Airbnb dispute.

__. Plaintiff alleges that he did not receive an effective electronic request identifying the evidence Wells Fargo required, the deadline for submitting it, and a usable electronic means of responding.

__. Plaintiff additionally stated during the subsequent recorded Wells Fargo call that he had not actually received the claimed physical evidence-request letter either.

__. On or about May 12, 2026, Wells Fargo reversed approximately $1,500 in provisional credits associated with the Airbnb dispute. Plaintiff's prior pleadings consistently identify this reversal and the resulting depletion of his checking and savings funds.

__. The reversal caused Plaintiff's checking account to become overdrawn and required funds from Plaintiff's savings to cover the negative balance, substantially depleting his immediately available funds.

__. Plaintiff did not understand why the money had been removed because he had not effectively received the underlying request for evidence or advance substantive communication concerning the adverse determination.

__. On or about May 13, 2026, Plaintiff contacted Wells Fargo concerning the reversal and was informed that Wells Fargo had requested evidence, had not received the requested response, and had closed or adversely resolved the claim.

__. Plaintiff again explained that Wells Fargo had repeatedly agreed to communicate substantive information electronically and that he had not effectively received the request for evidence.

__. Plaintiff sought to provide the evidence and have the claim reconsidered or reopened. Wells Fargo personnel advised that evidence would be required and, according to Plaintiff's recorded account of the conversation, a claims manager represented that Plaintiff would be sent an electronic communication through which the evidence could be submitted.

__. Plaintiff alleges that the promised electronic submission communication did not resolve the problem and that he remained unable to meaningfully complete the process through the method Wells Fargo represented would be provided.

Important verification result

I would now keep this as the approximately $1,500 Airbnb claim.

I would not identify the $583.58 claim as Airbnb. The documentary record supports treating it separately.

M. Separate May 2026 Claim Documented by Wells Fargo

__. Separate from the approximately $1,500 Airbnb claim described above, Wells Fargo's July 8, 2026 Enterprise Complaints response identifies Claim No. 2605050050852, which Wells Fargo states was opened on May 7, 2026 and involved a provisional credit of $583.58.

__. Wells Fargo's written response states that it requested additional information concerning that claim and established a May 21, 2026 deadline. Wells Fargo further states that it subsequently denied the claim and intended to deduct or deducted the provisional credit.

__. Plaintiff alleges this claim separately from the Airbnb matter and does not conflate the amounts or chronology.

__. Plaintiff alleges that the claim is another example of the broader communication problem to the extent the evidence establishes that substantive evidence requests or deadlines were communicated through inaccessible or ineffective means.

That resolves the conflict much more cleanly.

N. Broader Pattern of Claims

__. The Airbnb and $583.58 claims were not isolated events. Between approximately May 2024 and May 2026, Plaintiff alleges that Wells Fargo denied, closed, or otherwise adversely resolved more than ten disputes totaling more than approximately $4,000 after Plaintiff allegedly failed to provide supporting information or documentation that Plaintiff contends was not effectively communicated to him through an accessible electronic mechanism.

__. Plaintiff does not allege that each underlying merchant claim necessarily would have been decided in his favor.

__. Plaintiff alleges instead that in material instances he was deprived of or substantially impaired in his opportunity to receive the substantive request, understand

what evidence Wells Fargo required, determine when it was due, submit the material, and participate meaningfully before Wells Fargo made an adverse determination.

__. Plaintiff repeatedly learned of evidence requests, claim closures, or adverse determinations only after the relevant action had occurred, requiring him to spend substantial time contacting Wells Fargo to reconstruct what had happened.

__. The absence of timely accessible substantive information also impaired Plaintiff's ability to make informed decisions about provisional credits, anticipated reversals, available balances, spending, budgeting, and preservation of funds.

__. Plaintiff does not allege that a provisional credit guaranteed final payment. Plaintiff alleges that knowing whether Wells Fargo required evidence or intended to reverse the credit was material to responsible management of his available funds.

O. Debit-Card Restriction

__. In approximately spring 2025, Wells Fargo suspended Plaintiff's debit-card privileges after characterizing his dispute activity as misuse, abuse, or otherwise improper.

__. Plaintiff alleges that Wells Fargo relied at least in part upon the history of denied disputes and alleged failures to provide requested evidence—circumstances Plaintiff had repeatedly connected to Wells Fargo's failure to provide him accessible substantive communications.

__. Wells Fargo maintained the debit-card restriction for approximately five to six months. Prior pleadings allege that the restriction was eventually removed following repeated demands and threatened litigation.

__. The restriction materially interfered with Plaintiff's ordinary ability to access and use the funds in his Wells Fargo accounts and required him to use alternative methods of conducting financial transactions.

P. Teen Account

__. Wells Fargo's restrictions also affected debit-card access associated with the teen account Plaintiff maintained for his minor daughter.

__. Wells Fargo later closed the teen account after claiming that Plaintiff had failed to respond to correspondence concerning an issue requiring attention.

__. Plaintiff alleges that the nonresponse arose from the same known communication barrier. By that time Wells Fargo had repeatedly been informed that substantive paper-only communications were ineffective for Plaintiff and had repeatedly received requests for accessible electronic copies.

__. Closure of the teen account impaired Plaintiff's ability to use that Wells Fargo account to transfer funds to his daughter, monitor and manage her spending, and administer financial matters relating to her.

__. Plaintiff alleges the teen-account closure as part of the overall factual and causal chronology. Plaintiff does not rely upon his daughter's independent emotional reaction as a substitute for Plaintiff's own injury or standing.

Q. May 14, 2026 Escalation

__. Following the approximately $1,500 provisional-credit reversal and related claims calls, Plaintiff again contacted Wells Fargo on or about May 14, 2026 in an effort to obtain definitive implementation of the requested accommodation and prevent additional financial harm.

__. Plaintiff spent approximately two or more hours communicating with and being transferred among Wells Fargo personnel.

__. During the recorded communications, Plaintiff repeatedly identified ADHD and dyslexia, explained his difficulty with mailed substantive correspondence, described the adverse claims consequences, and specifically requested electronic communications.

__. Wells Fargo's own telephone system again instructed disabled customers to inform a representative if they wanted written communications in an alternative format pursuant to the ADA.

__. Yet Wells Fargo personnel did not provide Plaintiff a straightforward process through which the requested accommodation could simply be implemented.

__. A Claims Resolution Manager ultimately told Plaintiff that the claims department did not know whether electronic communications had been set up and that phone banking was responsible for electronic notification settings.

__. Plaintiff explained that phone banking had already transferred him to Claims. The Claims Resolution Manager acknowledged the inconsistency and said he would speak directly with the phone-banking team before transferring Plaintiff back.

__. The recorded call thereafter reached another Wells Fargo representative, who again suggested that another level of support might be required.

__. Plaintiff alleges that this circular transfer process required him repeatedly to explain a disability-related accommodation request Wells Fargo's own prerecorded system told him to make.

R. May 14 Medical Emergency

__. Immediately following the May 14, 2026 ordeal, Plaintiff experienced severe physical symptoms which he alleges were caused or materially exacerbated by the extreme stress associated with the prolonged calls and financial circumstances.

__. Plaintiff experienced tachycardia, arrhythmia, chest pain, breathing difficulty, dangerously elevated blood pressure, confusion, dizziness, and eventual collapse.

__. Plaintiff believed he might be suffering a serious cardiac event. His girlfriend attempted to transport him for medical treatment, but emergency services were ultimately called because of the apparent severity of his condition.

__. Emergency medical personnel transported Plaintiff by ambulance to Kaiser Permanente Sacramento Medical Center.

__. During ambulance transport Plaintiff took nitroglycerin because of concern regarding a cardiac event. Plaintiff received emergency-room treatment and subsequently required cardiology follow-up. The prior complaint consistently describes this medical sequence.

__. Plaintiff additionally alleges that he injured his shoulder during his collapse and experienced fear, humiliation, anxiety, depression, emotional trauma, and continuing concern regarding severe stress and his cardiac health.

__. Plaintiff alleges these harms only to the extent legally recoverable under the particular causes of action asserted and does not allege that every category of harm is recoverable under every count.

S. May 19 Executive Team Escalation

__. On May 19, 2026, a Wells Fargo Executive Team representative identified as "Onye" contacted Plaintiff concerning his accommodation complaint.

__. Plaintiff alleges that Onye apologized for the circumstances, stated that she was opening a complaint investigation, and advised that Wells Fargo would investigate the matter within approximately ten days.

__. Plaintiff repeatedly asked Onye to explain Wells Fargo's process for disability accommodations.

__. According to Plaintiff's prior contemporaneous account, Onye stated that she had not received training concerning the accommodation process and was unfamiliar with the procedure because accommodations were handled through Customer Service rather than through her Executive Team function.

__. Plaintiff alleges that by this point Wells Fargo's Executive Team had actual notice of the repeated accommodation problem, Plaintiff's claimed financial harm, and the medical emergency that occurred days earlier.

__. Plaintiff does not allege that Onye necessarily constituted a "managing agent" for purposes of punitive damages merely by virtue of her job title. The authority of the personnel who reviewed, authorized, approved, or ratified Wells Fargo's subsequent response is a matter for discovery.

T. May 21 Recorded Accommodation Call

__. On or about May 21, 2026, Plaintiff again contacted Wells Fargo specifically to determine how Wells Fargo's advertised alternative-format process worked and whether his requested accommodation had actually been implemented.

__. Wells Fargo's prerecorded system again stated that a customer who wanted written communications in an alternative format pursuant to the ADA should tell a representative or contact Wells Fargo at the designated number.

__. Plaintiff first spoke with a representative identified in the transcript as Mike.

__. When Plaintiff asked Mike how to obtain alternative-format communications, Mike searched his available resources and stated that he could not find information concerning the process.

__. Plaintiff asked whether Mike had actually been trained concerning disability accommodations. After further questioning, Mike acknowledged that he had not personally been trained on the accommodation issue Plaintiff was discussing.

__. Mike sought support and returned with information indicating that alternative electronic communication could supposedly be provided through text messages or electronic alerts.

__. When Plaintiff asked whether this meant substantive claims notifications and communications could be provided electronically, Mike initially answered affirmatively.

__. Mike then directed Plaintiff to Wells Fargo's ordinary banking-alert settings. Plaintiff pointed out that these were merely account alerts and did not constitute electronic delivery of substantive claims and account correspondence. Mike acknowledged that Plaintiff was correct.

__. Mike thereafter accessed Plaintiff's account and represented that the relevant notice-delivery and statement-delivery preferences were already configured as "online only."

__. Plaintiff expressly asked whether, based upon what Mike could see, all Wells Fargo communications should therefore be electronic. Mike answered "Yes," subject to one separately identified account preference.

__. Plaintiff explained that the representation did not match what was actually happening because substantive claims information and other important documents were not being made electronically available to him.

__. Mike escalated the call to a next-level support representative identified as Jasmine.

__. Plaintiff asked Jasmine whether Wells Fargo personnel received training concerning accommodations for disabled customers.

__. Jasmine responded on the recorded line: “There’s guidelines that we follow. I’m gonna be honest, there’s not active trainings.”

__. Jasmine described standard accommodations such as Braille and enlarged print but characterized Plaintiff’s requested electronic communication accommodation as essentially a “custom” accommodation requiring another department.

__. Plaintiff explained that he had already been told previously that his information had been forwarded to such a department and that the department would contact him, but meaningful implementation had not followed.

__. Jasmine further acknowledged that not all of the substantive claim information Plaintiff was describing was available electronically through Wells Fargo’s existing online functions.

__. Jasmine ultimately attempted to address or escalate the accommodation request, but Plaintiff alleges that the process again did not result in reliable delivery of the substantive electronic communications he had requested.

These allegations are now grounded in the actual transcript rather than our reconstructed summary.

U. May 28 Complaint Response

__. Wells Fargo subsequently completed what it characterized as an investigation concerning Plaintiff’s accommodation complaints and, on or about May 28, 2026, issued a written response under Case No. 06202605180002158. Plaintiff’s prior pleading identifies that response and describes its substance.

__. According to Plaintiff’s contemporaneous description of that response, Wells Fargo principally identified generic consumer alert functions, including balance, overdraft, transaction, debit-card, mobile, or text alerts, rather than establishing electronic access to the substantive claims correspondence Plaintiff had requested.

__. Plaintiff alleges that these generic functions did not cure the identified barrier because they did not reliably provide the substantive evidence requests, deadlines, investigation correspondence, determinations, provisional-credit communications, and instructions necessary for Plaintiff to act.

__. Plaintiff presently relies upon his contemporaneous pleading and records concerning the May 28 response. To the extent the actual response differs materially from Plaintiff's present description, the document itself will control.
I would use that last sentence rather than an internal drafting placeholder.

V. July 8 Enterprise Complaints Response

__. On July 8, 2026, Wells Fargo's Enterprise Complaints Management Office sent Plaintiff a secure electronic response under Wells Fargo Case No. 06202606150006802.

__. That written response expressly acknowledged that Plaintiff had requested email or text communications "to accommodate [his] disability."

__. Wells Fargo stated that it had accommodated the request by sending that particular response electronically and confirmed that Plaintiff's ordinary account statements were set for online delivery.

__. Plaintiff alleges that the July 8 response constitutes written institutional acknowledgment that the communication request was disability-related.

__. Plaintiff further alleges that sending one complaints response electronically and confirming ordinary online-statement delivery did not resolve his request for accessible electronic copies of substantive claims, evidence-request, deadline, investigation, provisional-credit, and adverse-action communications.

__. The same response documented claims for which Wells Fargo stated that evidence requests, provisional-credit notices, or determinations had been provided by letter, including the separate $583.58 claim identified above.

__. Plaintiff alleges that the July 8 response illustrates the core distinction: ordinary online statement delivery and generic banking functions were not equivalent to electronic access to the substantive communications requiring action.

__. The fact that the Enterprise Complaints Management Office itself transmitted a substantive complaint response securely and electronically further demonstrates that Wells Fargo possessed at least some ability to transmit substantive correspondence electronically. Plaintiff does not allege that the identical technical mechanism necessarily could be applied to every Wells Fargo claims system without burden; Wells Fargo's technical capabilities are within its knowledge.

W. Continuing Financial Consequences and Account Closure

__. The provisional-credit reversals, adverse claims decisions, debit restrictions, fees, negative balances, and loss of practical access to funds substantially disrupted Plaintiff's ability to manage ordinary financial obligations.
__. Plaintiff was compelled at various times to use alternative financial-service providers, including nontraditional or online financial services, which Plaintiff alleges were less convenient, involved additional fees or limitations, lacked comparable branch or ATM access, or were not accepted in every circumstance.
__. Plaintiff subsequently opened an account with another traditional financial institution.
__. Wells Fargo has advised Plaintiff that his overdrawn Wells Fargo account is subject to or scheduled for closure and/or charge-off. As of the preparation of this pleading, Plaintiff does not allege a completed closure, charge-off, or ChexSystems reporting event unless Wells Fargo has actually completed that event before filing.
__. Plaintiff alleges that the negative account condition was materially connected to provisional-credit reversals and other account conduct described herein.
__. Any future ChexSystems or other consumer-reporting consequence is alleged only if and when it actually occurs; Plaintiff does not plead anticipated reporting as a completed fact.
That is the safest wording based on what we can presently verify.

X. Reliance and Causation
__. Plaintiff reasonably relied upon Wells Fargo personnel for accurate information about Wells Fargo's own communication settings, accommodation records, claims processes, and available methods for submitting evidence because Plaintiff could not independently inspect those internal systems.
__. When Wells Fargo personnel represented that Plaintiff was already configured for "online-only" communications or otherwise represented that substantive electronic communication would be provided, Plaintiff proceeded on the understanding that additional steps to obtain the same accommodation were unnecessary or that promised electronic communications would follow.
__. Plaintiff consequently waited for promised electronic communications in material instances and refrained from repeatedly restarting an accommodation process Wells Fargo represented had already been initiated or implemented.
__. Had Wells Fargo accurately informed Plaintiff that the ordinary "online-only" setting did not cause substantive claims communications to become electronically available and that his requested accommodation had not been effectively implemented,

Plaintiff alleges that he would have undertaken additional measures to monitor claims, repeatedly contact Wells Fargo regarding missing correspondence, seek alternative methods of submitting evidence, and preserve funds against potential reversals.

__. Plaintiff does not allege that Wells Fargo caused the underlying merchant conduct giving rise to his disputes.

__. Plaintiff alleges that Wells Fargo caused separate and additional injury by impairing his ability to meaningfully participate in Wells Fargo's own claims, investigation, provisional-credit, and account-administration processes.

__. Plaintiff further alleges that inaccessible or missing substantive communications impaired his ability to make informed financial decisions concerning deadlines, provisional credits, anticipated reversals, available funds, spending, and budgeting.

__. The precise causal relationship between particular communications, claims, reversals, and losses will be further established through Wells Fargo's claim files, mailing records, call recordings, accommodation records, communication logs, account notes, and other discovery.

Y. Corporate Escalation and Institutional Knowledge

__. The accommodation issue was repeatedly escalated beyond individual frontline representatives to supervisors, claims-management personnel, next-level support, Executive Team personnel, and Enterprise Complaints personnel.

__. By May 2026, Wells Fargo personnel across multiple organizational functions had actual notice that Plaintiff asserted a disability-related need for accessible substantive electronic communications, that he attributed prior adverse claims outcomes to the communication barrier, and that the continuing dispute had allegedly resulted in serious financial and medical consequences.

__. Plaintiff alleges that the repeated escalations, complaint investigations, Executive Team involvement, recorded statements concerning employee training and internal processes, and subsequent written institutional responses are relevant to determining whether the conduct resulted merely from isolated employee mistakes or from broader deficiencies in Wells Fargo's practices.

__. Plaintiff does not presently know the identity, authority, or participation of Wells Fargo officers, directors, managing agents, or other corporate decisionmakers who reviewed, approved, authorized, or ratified the relevant policies or institutional responses.

__. Plaintiff therefore does not allege merely from job title that Mike, Jasmine, Onye, Dana V., or any individual frontline or complaints employee necessarily constituted a "managing agent" within the meaning of California Civil Code §3294.

__. Plaintiff alleges on information and belief that Wells Fargo's formal institutional responses and continuing decisions concerning Plaintiff's accommodation requests were reviewed, approved, authorized, or ratified by personnel whose identity, authority, knowledge, and participation are presently within Wells Fargo's possession and will be explored through discovery.

__. Plaintiff seeks punitive damages only to the extent the evidence ultimately establishes the requirements of California Civil Code §3294, including any necessary authorization, ratification, or managing-agent participation.

Z. Damages and Consequences

__. Plaintiff alleges economic losses including, where legally and causally attributable to Wells Fargo's challenged conduct, loss of disputed funds, reversal of provisional credits, account-related fees or charges, negative balances, loss of use of funds, loss of practical access to banking services, and costs associated with alternative financial services.

__. Plaintiff alleges additional disruption associated with suspension of his debit-card privileges, closure of the teen account, impairment of his Wells Fargo banking relationship, and any completed closure or charge-off of his own account occurring before judgment.

__. Plaintiff alleges emotional harm including anxiety, humiliation, embarrassment, frustration, depression, insomnia, fear, emotional anguish, and stress associated with repeated financial disruption and repeated efforts to explain his disability-related communication needs.

__. Plaintiff alleges physical consequences including the May 14 cardiac episode, ambulance transportation, emergency-room treatment, subsequent cardiology follow-up, exacerbation of cardiac symptoms, and shoulder injury associated with his collapse.

__. Plaintiff has additionally spent substantial time attempting to obtain the requested accommodation, understand Wells Fargo's claims decisions, determine why funds were removed, provide evidence, address account restrictions, and mitigate financial consequences.

__. Plaintiff seeks each category of damages or other relief only under those causes of action for which such recovery is legally permitted and does not allege that every category of harm is recoverable under every cause of action.

AA. Scope of Allegations and Discovery

__. The foregoing allegations identify representative events and communications presently known to Plaintiff and are not intended to suggest that the identified calls, claims, correspondence, promises, or account actions constitute every relevant instance of the challenged conduct.

__. Wells Fargo possesses call recordings, claim files, account notes, accommodation records, mailing and electronic-delivery logs, internal communications, complaint files, employee training materials, policies, technical records, and system data necessary to establish the complete chronology and scope of the relevant conduct.

__. Plaintiff has distinguished, to the extent presently possible, among matters personally known to him, statements made by Wells Fargo personnel, facts established by presently available documents, and matters concerning Wells Fargo's internal systems and decisionmaking that cannot reasonably be known without discovery.

**FIRST CAUSE OF ACTION**
**Violation of Unruh Civil Rights Act**
**California Civil Code §§ 51, 52**

__.Plaintiff incorporates by reference the preceding allegations.

__. Wells Fargo is a business establishment within the meaning of the Unruh Civil Rights Act and operates places of public accommodation within Title III of the ADA, including banking service establishments.

__. Plaintiff is an individual with disabilities within the meaning of applicable disability law. Plaintiff's ADHD and dyslexia substantially affect major life activities and functions relevant to processing, organizing, retaining, retrieving, and timely acting upon complex and time-sensitive written financial information.

__. As alleged above, Wells Fargo had actual and repeated notice of Plaintiff's disabilities, their relevant functional effects, and Plaintiff's disability-related need for

accessible electronic communications. Plaintiff repeatedly explained that electronic access was requested as a disability accommodation necessary for effective participation in Wells Fargo's banking and claims services rather than merely as a communication preference.

__. Plaintiff requested a reasonable modification of Wells Fargo's ordinary communication practices by requesting that substantive banking and claims communications also be made available through an accessible electronic channel. Plaintiff did not request cessation of physical mail and remained flexible regarding the electronic mechanism, including email, secure electronic messaging, online document delivery, mobile application, or another effective electronic means.

__. The requested modification was necessary because paper-only delivery did not provide Plaintiff reliable and effective access to complex and time-sensitive substantive communications because of the functional effects of his disabilities. Wells Fargo nevertheless failed to provide the requested modification or another effective alternative despite repeated notice and escalation.

__. Wells Fargo's generic electronic alerts, ordinary account statements, and fragmented telephone information did not provide Plaintiff equivalent access to substantive claims information, including evidence requests, response deadlines, investigatory communications, dispute determinations, provisional-credit information, and instructions necessary to participate effectively in Wells Fargo's claims processes.

__. Wells Fargo's failure to make a necessary and reasonable modification and/or otherwise provide effective access to its banking and claims services constituted discrimination prohibited by Title III of the Americans with Disabilities Act, including 42 U.S.C. §12182(b)(2)(A)(ii), and applicable implementing regulations.

__. Pursuant to California Civil Code §51(f), a violation of an individual's rights under the ADA constitutes a violation of the Unruh Civil Rights Act. Wells Fargo's predicate Title III violations therefore constitute violations of Civil Code §51(f). Plaintiff proceeds under §51(f) and does not assert an independent intentional-discrimination theory under §51(b).

__. As a direct and proximate result of the foregoing violations, Plaintiff suffered injury and damages and is entitled to the remedies authorized by California Civil Code §52, according to proof.

**SECOND CAUSE OF ACTION**
**Violation of California Disabled Persons Act**
**California Civil Code §§ 54, 54.1, 54.3**

(ADA-Predicate Disability Discrimination)

__. Plaintiff realleges and incorporates by reference each and every preceding allegation of this First Amended Complaint as though fully set forth herein.

__. Plaintiff is an individual with disabilities within the meaning of the California Disabled Persons Act ("DPA"), Civil Code §§54 et seq. As alleged above, Plaintiff's ADHD and dyslexia substantially affect functions relevant to his ability to reliably process, organize, retain, retrieve, and timely act upon complex and time-sensitive written financial communications.

__. Wells Fargo operates banking establishments open to the public and provides banking accommodations, advantages, facilities, privileges, and services, including account-management, claims, dispute, investigatory, provisional-credit, notice, and related communication services. Plaintiff sought to use and enjoy those banking services.

__. As alleged above, Wells Fargo had actual and repeated notice of Plaintiff's disabilities, their relevant functional effects, the disability-related communication barriers Plaintiff experienced, and Plaintiff's resulting need for accessible electronic communications. Plaintiff repeatedly requested that substantive banking and claims communications also be made available through an effective electronic channel. Plaintiff did not request that Wells Fargo discontinue physical mail and remained flexible regarding the particular electronic mechanism through which an accessible electronic copy could be provided.

__. Despite repeated notice and requests, Wells Fargo failed to provide the requested reasonable modification or another effective alternative. As a result, Plaintiff alleges that he was impaired in his ability to fully and equally access and enjoy Wells Fargo's banking and claims services, including his ability to timely receive, understand, retain, retrieve, and act upon substantive evidence requests, deadlines, investigatory communications, dispute determinations, provisional-credit communications, and other material account information.

__. As alleged more fully in Plaintiff's First Cause of Action and incorporated herein, Wells Fargo's foregoing conduct violated Plaintiff's rights under Title III of the Americans with Disabilities Act, including the reasonable-modification requirements applicable to places of public accommodation. Plaintiff incorporates the predicate Title III allegations of the First Cause of Action rather than repeating them herein.

__. California Civil Code §54.1(d) expressly provides that a violation of an individual's rights under the Americans with Disabilities Act also constitutes a violation of Civil Code §54.1. Accordingly, Wells Fargo's predicate violations of Plaintiff's rights under Title III of the ADA also constitute violations of Plaintiff's rights under §54.1.

__. By engaging in the foregoing conduct despite actual and repeated notice of Plaintiff's disability-related need for modification, Wells Fargo denied or interfered with Plaintiff's exercise and enjoyment of the rights protected by Civil Code §54.1 and is therefore subject to liability to the extent provided by Civil Code §54.3.

__. As a direct and proximate result of Wells Fargo's violations, Plaintiff suffered injury and damages as alleged herein and seeks the remedies authorized by Civil Code §54.3 and other applicable law, according to proof. Plaintiff does not seek duplicative statutory recovery under both the DPA and the Unruh Civil Rights Act for the same violation.

**THIRD CAUSE OF ACTION**
**Violation of California Unfair Competition Law**
**Business and Professions Code § 17200**

(Unlawful and Unfair Prongs Only)

__. Plaintiff realleges and incorporates by reference each and every preceding allegation of this First Amended Complaint as though fully set forth herein.

__. California Business and Professions Code § 17200 prohibits unfair competition, including any unlawful or unfair business act or practice. Wells Fargo is a "person" subject to the UCL within the meaning of Business and Professions Code § 17201.

__. Wells Fargo engaged in unlawful business practices by violating Plaintiff's rights under the Unruh Civil Rights Act, including Civil Code § 51(f), and the California Disabled Persons Act, including Civil Code § 54.1, as alleged in Plaintiff's

First and Second Causes of Action and incorporated herein. Those California statutory violations constitute predicate unlawful acts and practices for purposes of Business and Professions Code § 17200.

__. Wells Fargo also engaged in unfair business practices through the manner in which it administered Plaintiff's disability-related communication requests together with its claims, dispute, and account-administration processes. As alleged above, Wells Fargo repeatedly accepted and escalated Plaintiff's requests for accessible electronic communications and repeatedly represented that electronic communications or accommodations were available, active, or would be implemented, yet failed to provide Plaintiff a reliable means of electronically receiving substantive claims and account communications necessary for Plaintiff to effectively participate in Wells Fargo's banking and claims processes.

__. The unfair practices alleged herein included, without limitation: (a) failing, despite repeated notice of Plaintiff's disability-related communication limitations, to provide effective electronic access to material evidence requests, deadlines, investigatory communications, dispute determinations, provisional-credit communications, and other substantive account information; (b) providing generic electronic alerts and ordinary online account information that did not contain the substantive communications necessary for Plaintiff to effectively participate in claims and disputes; (c) providing inconsistent and contradictory information concerning Wells Fargo's accommodation procedures, available electronic communication mechanisms, and the status of Plaintiff's requested accommodation; and (d) thereafter denying claims, reversing provisional credits, imposing account restrictions or other financial consequences, or otherwise taking adverse action based in whole or in part upon Plaintiff's alleged failure to timely provide information or respond to communications that Wells Fargo had failed to make effectively accessible through the repeatedly requested accommodation.

__. The foregoing practices caused substantial consumer injury that Plaintiff could not reasonably avoid through the ordinary banking and communication mechanisms available to him. Plaintiff repeatedly sought assistance from Wells Fargo, repeatedly explained the disability-related communication barrier, and reasonably depended upon Wells Fargo to accurately identify and administer its own accommodation, claims, and communication procedures. The alleged injury was not outweighed by countervailing benefits to consumers or competition, particularly because Plaintiff did not request that Wells Fargo discontinue physical correspondence

and remained flexible regarding the means by which an accessible electronic copy could be provided.

__. Wells Fargo's unlawful and unfair practices caused Plaintiff injury in fact and loss of money or property. As alleged above, the challenged practices impaired Plaintiff's ability to timely receive and respond to material claims information and contributed to adverse claim and account consequences, including reversal of provisional credits, loss of disputed funds where causally attributable to the challenged practices, overdraft and account-related charges, loss of use of funds, and other identifiable economic losses.

__. Plaintiff's economic injuries were caused by the challenged practices because, had Wells Fargo provided the requested and repeatedly represented accessible substantive communications or another effective alternative, Plaintiff alleges that he would have been able to more reliably and timely receive, understand, preserve, retrieve, and respond to material claims information and evidence requests and thereby avoid or mitigate at least some of the adverse claim and account consequences alleged herein. Plaintiff therefore suffered injury in fact and lost money or property "as a result of" Wells Fargo's unlawful and unfair business practices and has standing to maintain this cause of action pursuant to Business and Professions Code § 17204.

__. Pursuant to Business and Professions Code § 17203, Plaintiff seeks restitution and restoration of money or property in which Plaintiff has a legally cognizable interest and that is subject to restitution under the UCL, together with such other nonduplicative relief as is authorized by the UCL and applicable law.

**FOURTH CAUSE OF ACTION**
**Breach of Contract**

Plaintiff realleges and incorporates by reference each and every preceding allegation of this First Amended Complaint as though fully set forth herein.

__. At all relevant times, Plaintiff and Wells Fargo were parties to enforceable written agreements governing Plaintiff's consumer deposit accounts and use of Wells Fargo's banking services. Those agreements included the Wells Fargo Deposit Account Agreement ("DAA"), Wells Fargo Online Access Agreement ("OAA"), applicable

Consumer Account Fee and Information Schedules, account-specific disclosures, amendments, and addenda in effect during the relevant periods (collectively, the "Account Agreements").

__. The Account Agreements established the parties' respective contractual rights and obligations concerning Plaintiff's deposit accounts and related banking services, including account statements and notices, electronic and online account services, disputed transactions and claims, investigations, provisional credits and reversals, requests for information and documentation, and customer cooperation. Wells Fargo's own consumer disclosures identify the DAA as providing the terms and conditions applicable to its consumer deposit accounts and identify the applicable schedules and addenda as additional components of those account terms.

__. Plaintiff performed his material obligations under the Account Agreements, or was excused from performance to the extent Wells Fargo prevented, hindered, waived, or materially interfered with his ability to perform. Plaintiff maintained and used his accounts, initiated claims and disputes, repeatedly communicated with Wells Fargo concerning those matters, and attempted to provide information and documentation and otherwise participate in Wells Fargo's contractual claims and account-administration processes.

__. Wells Fargo breached the Account Agreements by failing to perform one or more express contractual obligations applicable to Plaintiff's accounts, claims, notices, and account-related communications, as alleged herein, including those contractual obligations specifically identified in the preceding General Allegations and incorporated herein. Plaintiff's breach-of-contract claim is based upon the terms and legal effect of the Account Agreements themselves and does not depend upon treating Wells Fargo employees' subsequent oral promises as express terms of the written Account Agreements.

__. In particular, to the extent the applicable Account Agreements required Wells Fargo to provide, deliver, or make available particular statements, notices, documents, or account-related information through specified or applicable delivery mechanisms, Wells Fargo breached those obligations where it failed to provide, deliver, or make such materials available in accordance with the governing contractual terms. Plaintiff does not allege that the Account Agreements prohibited Wells Fargo from communicating by physical mail or categorically required every communication generated by every Wells Fargo department to be transmitted by email.

__. Plaintiff further alleges that, where Wells Fargo exercised contractual rights to request documentation or information from Plaintiff, investigate claims, provide or reverse provisional credits, or take other action affecting Plaintiff's accounts, Wells Fargo failed in material instances to perform the corresponding express obligations imposed upon it by the Account Agreements, as specifically alleged in the General Allegations. Plaintiff does not rely upon a generalized duty of reasonable claims administration as a substitute for an express contractual obligation.

__. Wells Fargo's breaches were a substantial factor in causing Plaintiff economic injury. As alleged above, Wells Fargo's contractual breaches impaired Plaintiff's ability to timely protect his rights and interests under the Account Agreements and contributed to adverse claim and account consequences, including reversal of provisional credits, loss of funds where causally attributable to the contractual breaches, account-related charges or fees, and loss of use of funds.

__. As a direct and proximate result of Wells Fargo's breaches, Plaintiff suffered contractual damages according to proof and seeks all damages and other relief legally recoverable under California contract law.

## FIFTH CAUSE OF ACTION

## Breach of Implied Covenant of Good Faith and Fair Dealing

_. Plaintiff realleges and incorporates by reference each and every preceding allegation of this First Amended Complaint as though fully set forth herein.

__. At all relevant times, Plaintiff and Wells Fargo were parties to the Account Agreements identified above, including the applicable Deposit Account Agreement, Online Access Agreement, Consumer Account Fee and Information Schedule, account-specific disclosures, amendments, and addenda. Those agreements established contractual rights and benefits concerning Plaintiff's deposit accounts and Wells Fargo's provision and administration of account, claims, dispute, notice, and related banking services.

__. The Account Agreements contained an implied covenant of good faith and fair dealing requiring that neither party unfairly interfere with the other party's right to receive the benefits of the agreements. Plaintiff does not contend that the implied

covenant prohibited conduct expressly authorized by the Account Agreements or created substantive contractual rights inconsistent with their express terms.

__. The Account Agreements afforded Wells Fargo discretion in administering aspects of Plaintiff's banking relationship, including claims and disputed transactions, requests for information or documentation, investigations, provisional credits and reversals, and other account-administration matters. Plaintiff alleges that the purposes and benefits of those contractual processes included a meaningful opportunity to participate in claims and disputes, provide information requested of him, and receive the account services and contractual benefits available under the Account Agreements.

__. As alleged above, Wells Fargo had actual and repeated notice that Plaintiff's disabilities materially impaired his ability to reliably process, organize, retain, retrieve, and timely act upon complex and time-sensitive substantive financial communications when such communications were provided only through traditional paper correspondence. Plaintiff repeatedly requested accessible electronic copies of substantive communications, remained flexible as to the particular electronic mechanism, and was repeatedly informed by Wells Fargo personnel that electronic communications or accommodations were available, active, or would be implemented.

__. Despite that knowledge, Wells Fargo allegedly exercised discretion available to it in administering Plaintiff's claims, disputes, requests for information, investigations, and related account processes in a manner that unfairly frustrated Plaintiff's ability to obtain the benefits of those contractual processes. In material instances, Wells Fargo allegedly required Plaintiff to provide information or documentation while failing to effectively communicate the corresponding substantive requests, deadlines, instructions, or available means of response after repeatedly acknowledging Plaintiff's disability-related communication barrier.

__. Wells Fargo thereafter allegedly relied, in material instances, upon Plaintiff's failure to timely respond or provide requested information when making adverse claim or account determinations, notwithstanding Wells Fargo's prior knowledge of the communication barrier and its repeated representations concerning electronic access. Plaintiff alleges that Wells Fargo thereby used circumstances it knew of and allegedly had materially contributed to as a basis for decisions adversely affecting Plaintiff's claims, provisional credits, funds, or accounts.

__. Plaintiff does not contend that the implied covenant prevented Wells Fargo from exercising any contractual right expressly granted by the Account Agreements, including any expressly authorized right to investigate claims, request documentation, reverse provisional credits, communicate by physical mail, or take other authorized account action. Rather, Plaintiff alleges that Wells Fargo exercised discretion in the performance and administration of those contractual rights and processes in a manner that unfairly interfered with and frustrated Plaintiff's receipt of the contractual benefits and thereby breached the implied covenant of good faith and fair dealing.

__. Plaintiff performed his material obligations under the Account Agreements or was excused from performance to the extent Wells Fargo prevented, hindered, waived, or materially interfered with his ability to perform.

__. Wells Fargo's breach of the implied covenant was a substantial factor in causing Plaintiff economic injury because it impaired Plaintiff's ability to timely participate in claims and disputes, provide requested information, protect provisional credits and disputed funds, and avoid or mitigate adverse account consequences.

__. As a direct and proximate result of Wells Fargo's breach of the implied covenant, Plaintiff suffered economic damages according to proof, including losses associated with provisional-credit reversals, account-related charges or fees, loss of funds or use of funds, and other economic losses to the extent causally attributable to Wells Fargo's breach and legally recoverable under California contract law.

## SIXTH CAUSE OF ACTION
## Negligent Misrepresentation

Plaintiff realleges and incorporates by reference each and every preceding allegation of this First Amended Complaint as though fully set forth herein.

__. As alleged with greater particularity in the preceding General Allegations, Wells Fargo, through its representatives, supervisors, claims personnel, claims managers, and other personnel acting within the course and scope of their duties, repeatedly made representations to Plaintiff concerning then-existing facts relating to the status of Plaintiff's requested disability-related electronic communication accommodation and the then-existing operation and capabilities of Wells Fargo's communication and claims processes.

__. Among the representations specifically identified in the preceding allegations, Wells Fargo personnel represented, in substance, that Plaintiff was already enrolled in or set up to receive electronic communications as a disability accommodation, that the requested electronic communication accommodation was active or had already been implemented, and, where specifically alleged, that Wells Fargo's then-existing systems or processes currently permittedPlaintiff to receive or respond to substantive claims communications electronically. These allegations concern representations of then-existing facts or conditions and do not include promises concerning future performance.

__. The foregoing representations were materially false or inaccurate when made to the extent specifically alleged herein. Contrary to Wells Fargo's representations, the represented accommodation or electronic capability was not implemented or functioning in the manner Wells Fargo personnel represented to Plaintiff. As alleged above, material claims communications—including evidence requests, deadlines, investigatory communications, dispute determinations, provisional-credit information, and instructions necessary to respond to claims inquiries—were not reliably made available to Plaintiff through the accommodation or electronic process represented as then active or available.

__. The Wells Fargo personnel responsible for the particular representations identified in the General Allegations lacked reasonable grounds for believing those representations to be true under the circumstances alleged. Wells Fargo personnel provided materially inconsistent and contradictory information concerning whether Plaintiff's accommodation had been implemented, what accommodation was reflected in Wells Fargo's systems, what department was responsible for implementing it, and what electronic mechanisms were actually available for substantive claims communications. In particular instances identified above, personnel made affirmative representations concerning the status or capabilities of Wells Fargo's own systems despite acknowledging uncertainty, demonstrating lack of familiarity with the applicable accommodation process, or otherwise lacking an identified factual basis sufficient to support the representation. The precise internal records and information available to the respective Wells Fargo personnel at the time of those representations are matters within Wells Fargo's possession and control.

__. Wells Fargo personnel made the foregoing representations while responding directly to Plaintiff's disability-accommodation requests and claims inquiries and with the intent that Plaintiff rely upon those representations in determining whether his

requested accommodation had been implemented, how substantive banking and claims communications were then available to him, and whether further action was necessary to obtain accessible communications. Wells Fargo knew or reasonably should have expected that Plaintiff would rely upon its personnel for accurate information concerning Wells Fargo's own accommodation records, account systems, claims processes, and communication capabilities.

__. Plaintiff actually relied upon the foregoing representations. After Wells Fargo personnel represented that the requested electronic accommodation was already active, implemented, or available, Plaintiff proceeded on the understanding that substantive communications necessary to participate in Wells Fargo's banking and claims processes would be made accessible through the represented electronic mechanism. In reliance thereon, Plaintiff refrained from repeatedly restarting the accommodation-request process and, in material instances, waited for or expected the represented electronic communications rather than undertaking additional efforts he otherwise would have taken to determine whether substantive communications had instead been generated or transmitted solely through another channel.

__. Plaintiff's reliance was reasonable and justified because the representations concerned the status and capabilities of Wells Fargo's own internal systems, accommodation records, account processes, and communication mechanisms—matters concerning which Wells Fargo possessed substantially greater knowledge and access to information than Plaintiff. Plaintiff could not independently inspect Wells Fargo's internal records or systems to determine whether the accommodation had actually been entered, activated, implemented, or functioning as represented and therefore reasonably relied upon Wells Fargo personnel's affirmative representations concerning those matters.

__. Plaintiff's reliance upon the foregoing misrepresentations was a substantial factor in causing his economic injury. As alleged above, Plaintiff did not reliably receive or access certain substantive claims communications through the electronic mechanism Wells Fargo represented was active or available, impairing Plaintiff's ability in material instances to timely identify and respond to requests for information or documentation. Plaintiff alleges that this contributed to adverse claim and account consequences, including denial of claims, reversal of provisional credits, account-related charges or fees, loss of funds or use of funds, and other economic losses to the extent causally attributable to the particular misrepresentations and Plaintiff's reliance thereon.

__. As a direct and proximate result of Wells Fargo's negligent misrepresentations and Plaintiff's reasonable and justified reliance thereon, Plaintiff suffered damages according to proof and seeks all damages and other relief legally recoverable under California law.

## SEVENTH CAUSE OF ACTION
**Promissory Estoppel**

(Pled in the Alternative)

__. Plaintiff realleges and incorporates by reference each and every preceding allegation of this First Amended Complaint as though fully set forth herein.

__. As alleged with greater particularity in the preceding General Allegations, Wells Fargo, through its representatives, supervisors, claims personnel, claims managers, and other personnel acting within the course and scope of their duties, repeatedly made clear and definite promises to Plaintiff concerning the future provision and implementation of accessible electronic communications in response to Plaintiff's disability-related accommodation requests and claims inquiries.

__. Among the promises specifically identified in the preceding General Allegations, Wells Fargo personnel promised, in substance and in the particular circumstances alleged therein, that substantive claims information and evidence requests would be provided to Plaintiff electronically; that Wells Fargo would provide electronic instructions concerning requested evidence and how Plaintiff could submit it; that Plaintiff's accommodation request would be submitted to or handled by personnel responsible for disability accommodations and that such personnel would contact Plaintiff; and, where specifically alleged, that Wells Fargo would implement or provide Plaintiff's requested electronic communication accommodation. These allegations concern promises of future performance and are distinct from the representations of then-existing fact alleged in Plaintiff's Sixth Cause of Action.

__. The foregoing promises were sufficiently clear and definite to reasonably communicate that Wells Fargo would undertake the promised actions. They were made directly in response to Plaintiff's requests for disability-related electronic communications and, in material instances, during communications concerning particular claims, evidence requests, or the steps Wells Fargo represented it would take to provide or implement the requested accommodation.

__. Wells Fargo made the foregoing promises under circumstances in which it reasonably should have expected them to induce Plaintiff's action or forbearance. Plaintiff repeatedly explained that, because of the functional effects of his disabilities, he needed substantive and time-sensitive banking and claims communications to be electronically accessible in order to reliably process, organize, retrieve, and timely act upon them. Wells Fargo therefore knew or reasonably should have known that Plaintiff would rely upon its promises in determining whether further action was necessary to secure accessible communications and how to participate in Wells Fargo's claims processes.

__. Plaintiff actually and reasonably relied upon Wells Fargo's promises. In reliance upon Wells Fargo's assurances that the requested accommodation would be implemented and that substantive claims information, evidence requests, instructions, or other material communications would be provided electronically, Plaintiff waited for the promised communications and refrained from repeatedly restarting the accommodation-request process or undertaking additional efforts he otherwise would have taken to determine whether unidentified substantive communications had instead been generated or transmitted solely through another channel.

__. Plaintiff further relied upon Wells Fargo's promises by continuing to participate in Wells Fargo's claims and account processes on the understanding that the promised electronic access would provide him a meaningful opportunity to receive and timely act upon material information required for those processes. Had Wells Fargo informed Plaintiff that the promised electronic communications would not be provided, Plaintiff alleges that he would have taken additional steps to obtain the information through other available means, followed up concerning missing substantive communications, sought alternative means of submitting requested documentation, and taken additional measures to protect his claims and financial interests.

__. Wells Fargo failed to perform the foregoing promises in material respects. Despite repeatedly promising that Plaintiff would receive accessible electronic communications and substantive claims information electronically, Wells Fargo did not reliably provide the promised accommodation, evidence requests, substantive claims information, response instructions, or other material communications through the promised electronic means.

__. Plaintiff's reliance upon Wells Fargo's promises was detrimental. Wells Fargo's failure to provide the promised electronic communications impaired Plaintiff's ability, in material instances, to timely identify and respond to requests for information

or documentation and contributed to adverse claim and account consequences, including denial of claims, reversal of provisional credits, account-related charges or fees, loss of funds or use of funds, and other economic losses to the extent causally attributable to Wells Fargo's unfulfilled promises and Plaintiff's reliance thereon.

__. Wells Fargo reasonably should have foreseen such detriment because Plaintiff repeatedly explained the disability-related reason for requesting accessible electronic communications and the importance of receiving substantive and time-sensitive claims and account information through an accessible electronic channel.

__. Plaintiff reasonably and foreseeably changed his position through action and forbearance in reliance upon Wells Fargo's promises and suffered resulting detriment. Under the circumstances alleged herein, an appropriate reliance-based remedy is necessary to avoid injustice.

__. Plaintiff pleads this cause of action in the alternative to his contractual causes of action. To the extent Wells Fargo contends or establishes that the foregoing promises did not constitute enforceable terms or modifications of the written Account Agreements, Plaintiff alleges that the promises are nevertheless enforceable under the doctrine of promissory estoppel because they were clear and definite, Wells Fargo reasonably should have expected them to induce action or forbearance, they did induce Plaintiff's reasonable and detrimental reliance, and an appropriate reliance-based remedy is necessary to avoid injustice.

__. As a direct and proximate result of Plaintiff's reasonable and detrimental reliance upon Wells Fargo's promises, Plaintiff suffered detriment and economic loss according to proof and seeks the relief legally available under California law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alexander Ojingwa respectfully requests judgment against Defendant Wells Fargo Bank, N.A., and DOES 1 through 50, as applicable, and requests the following relief to the extent authorized by the particular cause or causes of action established:

1. Compensatory and Actual Damages. For actual and compensatory damages according to proof for all legally recoverable economic and noneconomic injuries

proximately caused by Defendant's conduct, including, where recoverable under the applicable cause of action, loss of funds, reversal of provisional credits, account-related charges and fees, loss of use of funds, costs and losses associated with impaired access to banking services, consequential economic losses, and other actual damages established by the evidence;

2. Unruh Civil Rights Act Remedies. For actual damages, statutory damages, attorney's fees to the extent legally recoverable, and all other relief authorized by the Unruh Civil Rights Act, including California Civil Code §§ 51(f) and 52, for each actionable offense established by the evidence and according to proof;

3. California Disabled Persons Act Remedies. For actual damages, statutory damages, attorney's fees to the extent legally recoverable, and all other relief authorized by the California Disabled Persons Act, including California Civil Code §§ 54, 54.1, and 54.3, for each actionable offense established by the evidence and according to proof;

4. No Duplicative Recovery Under Civil Code §§ 52 and 54.3. Plaintiff pleads his statutory disability-access theories in the alternative or cumulatively to the extent permitted by law but does not seek damages under both Civil Code § 52 and Civil Code § 54.3 for the same act or failure to act. Plaintiff seeks the statutory remedy or remedies legally available for each independently actionable violation established by the evidence;

5. Restitution and Restoration Under the UCL. For restitution and restoration of money or property, and such other equitable monetary relief as is legally available under California Business and Professions Code § 17200 et seq., including restoration of money or property in which Plaintiff establishes a legally cognizable ownership or vested interest and that Defendant wrongfully acquired or retained;

6. Contract Damages. For damages according to proof legally recoverable for breach of contract and breach of the implied covenant of good faith and fair dealing, including economic and consequential damages to the extent authorized by California contract law and established to have been caused by the contractual breaches alleged herein;

7. Negligent-Misrepresentation Damages. For actual damages and other relief according to proof legally recoverable as a result of Defendant's negligent misrepresentations and Plaintiff's reasonable and justified reliance thereon;

8. Promissory-Estoppel Relief. For reliance-based or other relief legally available under the doctrine of promissory estoppel and appropriate to remedy the detriment caused by Plaintiff's reasonable reliance upon the promises established by the evidence;

9. Emotional and Physical Injury Damages. For damages arising from Plaintiff's emotional and physical injuries, including emotional distress and physical consequences alleged herein, only to the extent such damages are legally recoverable under the particular cause or causes of action established, according to proof;

10. Punitive and Exemplary Damages. For punitive and exemplary damages pursuant to California Civil Code § 3294 only upon a cause of action for which punitive damages are legally available, and only to the extent Plaintiff proves by clear and convincing evidence the requisite oppression, fraud, or malice and satisfies all requirements applicable to punitive liability against a corporate employer, including any required participation, authorization, or ratification by an officer, director, or managing agent;

11. Prejudgment and Postjudgment Interest. For prejudgment interest to the extent authorized by California Civil Code § 3287 or other applicable law, and for postjudgment interest at the lawful rate;

12. Costs of Suit. For Plaintiff's recoverable costs of suit as authorized by applicable law;

13. Attorney's Fees Where Legally Recoverable. For reasonable attorney's fees to the extent such fees are actually incurred and authorized by statute, contract, or other applicable law. Plaintiff does not seek attorney's fees as compensation for his own time spent representing himself;

14. Additional Statutory or Equitable Relief. For any additional statutory, restitutionary, or equitable relief expressly authorized by the California causes of action upon which Plaintiff prevails, provided that Plaintiff does not seek duplicative recovery for the same injury; and

15. Other and Further Relief. For such other and further relief as the Court deems just and proper and as is legally authorized by the causes of action established.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

**Dated: 08/07/2026**

Respectfully submitted,

Alexander Ojingwa
Plaintiff in Pro Per / Pro Se